(Decided November 20th, 1896).

---

# JAMES H. SMITH *vs.* JOHN R. PATTISON, Trustee.

*Fraudulent Conveyances—Burden of Proof to Show Bona Fides of a Conveyance When the Grantor is Adjudicated an Insolvent— Vacating Sale of Property by a Person in Contemplation of Insolvency.*

When a conveyance of property is assailed as being in fraud of creditors and void as to them, it must generally be shown by the party attacking the deed that the transaction was not *bona fide*, and that the grantee participated in the fraudulent purpose of the grantor.

But under Code, Art. 47, sec. 24, amended by the Act of 1896, chap. 446, when a transfer of property is made by a person who is afterwards adjudicated an insolvent, within the time prescribed, such transfer is held to be *prima facie* in fraud of the creditors of the

grantor, and the burden of proof is thrown upon the grantor and grantee to show the *bona fides* of the transaction.

On December 27, 1895, J. sold his stock of goods to his father, both parties being country merchants in villages a few miles apart. The price named was $5,700, and at the time of the transaction the father borrowed from another son, L., there present, $2,300, and paid the sum to J., together with a check for $300, and promissory notes for the balance. J. then and there paid to his brother L. $2,000, which he owed him. On January 7, 1896, L. bought from J. for $2,000 in cash, the promissory notes given to J. by his father, amounting to $3,113. On January 15, J. applied for the benefit of the insolvent laws, returning in his inventory about $700 worth of goods, but no money, and showing a list of debts amounting to $6,000. *Held*, upon the facts,

1st. That the sale was made by J. for the purpose of defrauding his creditors.

2nd. That the vendee had notice of this fraudulent purpose and was not a *bona fide* purchaser.

3rd. That the sale should he set aside upon the application of the trustee in insolvency of J.

Appeal from a decree of the Circuit Court for Dorchester County (LLOYD, J.)

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*Alonzo L. Miles*, for the appellant.

*M. R. Walter*, and *John R. Pattison* (with whom was *Sewell T. Milbourne* on the brief), for the appellee.

BRYAN, J., delivered the opinion of the Court.

James L. Smith, on the fifteenth day of January, eighteen hundred and ninety-six, made application for the benefit of the insolvent laws. On the first day of February following, John R. Pattison, his permanent trustee, filed a bill in equity against James H. Smith, for the purpose of setting aside a sale of goods and merchandise which had been made to him by the insolvent on the twenty-seventh day of December, eighteen hundred and ninety-five. It was alleged in the bill of complaint that the sale was made with

intent to hinder, delay and defraud the creditors of the vendor; and that the vendee had knowledge of the vendor's fraudulent intent, and that he aided and assisted him in carrying it into effect. The defendant in his answer denied these allegations. The answer, although under oath, is not to be taken as evidence in favor of the defendant. Code, Article 16, section 147.

James L. Smith was engaged in business as a country merchant at East New Market and at Secretary, two villages in Dorchester County; having a stock of goods at each place; James H. Smith was carrying on a similar business at Vienna, another village in the same county. These villages are within a few miles of each other. On the twenty-seventh of December, eighteen hundred and ninety-five, James L. Smith, James H. Smith, his father, and Lewis L. Smith, his brother, met at night in the father's storehouse, in Vienna, and then and there James, the son, sold to his father his stock of goods at East New Market. The price named in the sale was five thousand seven hundred and thirteen dollars and eighty-five cents. James, the father, borrowed at the same time from his son Lewis twenty-three hundred dollars, and paid the money thus borrowed to his son James and gave him his check for three hundred dollars, and at the same time delivered to him his five promissory notes for the remainder of the purchase money. James, the son, then and there paid to his brother Lewis two thousand dollars which he owed him. Afterwards James, the father, executed a mortgage to Lewis to secure the payment of the money borrowed from him. On the first of January Lewis purchased from his father the Vienna stock of goods at the price of two thousand dollars, and afterwards credited this amount on the mortgage. On the seventh of January Lewis purchased from James, the son, the five notes given by the father as part of the price of the New Market goods, and paid him two thousand dollars for them; said notes aggregating three thousand one hundred and thirteen dollars and eighty-five cents. On the fifteenth

of January James (the son) applied for the benefit of the insolvent laws; and returned in his schedule the stock of goods at Secretary (afterwards appraised at about seven hundred dollars), a few book accounts, but no money or other property. The list of debts showed that he owed about six thousand dollars. We do not find it necessary to discuss in detail the evidence in this case. We have, however, given it a very careful examination, and are fully satisfied that James L. Smith made the sale of the stock of goods to his father for the purpose of defrauding his creditors. It was part of a scheme deliberately planned which was to receive its final consummation by his release from his debts through proceedings in insolvency. Article 47, section 8, of the Code, makes sales of this kind void, and vests the property sold in the trustee in insolvency. By a long course of decisions it has been settled that the fraud of a vendor does not vitiate a sale unless the vendee has participated in the fraudulent intent. *Cook* v. *Cook*, 43 Md. 533; *Fuller* v. *Brewster*, 53 Maryland, 359; *Totten* v. *Brady*, 54 Maryland, 170, and many other cases. Where, however, the vendor has been declared an insolvent debtor on his own application within four months after the sale, or under proceedings instituted against him within the same time by his creditors, a rule of practice is established by section 24 of Article 47, of the Code, as amended by the Act of 1896, chapter 446. It enacts that if any deed, assignment, transfer or delivery, &c., of goods, chattels, &c., be made by any person when insolvent or in contemplation of insolvency, "the same shall be *prima facie* intended to hinder, delay and defraud the creditors of the person by whom the same is made, and the burthen of proof shall rest upon him and the grantee to explain the same and show the *bona fides* thereof." It was always required that deeds, assignments and transfers should be made *bona fide*; it was not sufficient that they should be made on good or valuable consideration. But the party attacking the deed was required to establish by proof that the transaction was not

*bona fide.* This twenty-fourth section reverses the rule of evidence in the cases embraced by it, and changes the burden of proof by throwing it on the parties to the deed or transfer. It becomes necessary then to inquire whether this burden has been sustained. Without recapitulating the items of evidence we will state our conclusions. It is very clear to us that Smith, the father, had ample reason from the facts within his knowledge to believe that his son was perpetrating a fraud on his creditors, and that if his plans were successful he would place the stock of goods and their proceeds beyond their reach. This Court has frequently given its opinion on such a state of facts. In *Baynard* v. *Norris,* 5 Gill, 483, it was said : "In any purchase, if there be circumstances which in the exercise of common reason and prudence ought to put a man upon particular inquiry, he will be presumed to have made that inquiry, and will be charged with notice of every fact which that inquiry would give him." And again, " A purchaser whenever he has sufficient information to put him on inquiry, in equity is considered as having notice ; and in such case he will not be deemed a *bona fide* purchaser." We may also refer to *Green* v. *Early,* 39 Maryland, 229 ; *Abrams* v. *Sheehan,* 40 Maryland, 446, and *Higgins* v. *Lodge,* 68 Maryland, 235. Upon this principle we must hold that Smith, the father, was not a *bona fide* purchaser. The Court below set aside the sale of the stock of goods and we affim its decision.

*Decree affirmed with costs.*

(Decided December 3rd, 1896).