[No. 35797. *En Banc.* December 21, 1961.]

ALEXANDER GROSS *et al., Appellants,* v. WASHINGTON STATE
FERRIES, *Respondent.*\*

\*Reported in 367 P. (2d) 600.

*Shannon Stafford*, for appellants.

*The Attorney General* and *Gordon W. Moss, Special Assistant*, for respondent.

WEAVER, J.—Does plaintiff's[1] failure to file a verified claim with the Washington Toll Bridge Authority within thirty days after the time her alleged claim against it for damages for personal injuries accrued, as required by RCW 47.60.250[2], foreclose her action based upon the Jones Act (46 U. S. C. § 688) and the general maritime doctrine of unseaworthiness?

Plaintiff, a waitress, was employed by Clark's Ferry Concessions, Inc., which maintained restaurant facilities aboard defendant's ferry, Illahee, operating across the navigable waters of Puget Sound between Seattle and Bainbridge Island. We assume, in deciding the question presented to us, that plaintiff was a "seaman" and a member of the Illahee's crew.

December 9, 1956, while in the course of her employment

---

[1] Lillian Gross will be referred to as the sole plaintiff-appellant, her husband being only a nominal party.

[2] RCW 47.60.250—"As a condition to a recovery thereon, a verified claim against the authority growing out of such damages, loss, injuries or death must first be presented to the authority and filed with its secretary within thirty days after the time when such claim accrued. . . . No action shall be maintained against the authority upon such claim until the same has been presented to, and filed with, the authority and sixty days have elapsed after such presentation and filing, nor more than three years after such claim accrued. [1951 c 259 § 10]."

serving customers at the food counter on board the vessel, plaintiff slipped and fell to the deck. In her complaint, filed November 23, 1959, she alleged that her injuries were the direct and proximate result of defendant's negligence: the deck of the area where she worked was slick, unsafe, and dangerous because a ventilator leaked water onto it.

The trial court concluded that the Washington Toll Bridge Authority has governmental immunity; that the immunity has been waived conditionally; that the waiver is subject to the provisions of RCW 47.60.250 (quoted *supra,* footnote [2]) requiring that claims against the authority be filed within thirty days after the time the claim accrues; and, since it is admitted plaintiff did not file a claim, that her action must be dismissed.

Plaintiff now appeals from an order that denies her motion for summary judgment; grants defendant's motion for summary judgment; and dismisses, with prejudice, plaintiff's action against the authority.

Plaintiff contends (a) that the Jones Act (46 U. S. C. § 688, containing a three-year statute of limitations) pre-empts the entire field of liability for injuries to seamen; hence, any action by the state—especially RCW 47.60.250 that requires a claim be filed within thirty days of the date the claim accrues—violates Art. I, § 8 (commerce clause), and Art. III, § 2 (federal judicial power over admiralty cases) of the federal constitution, and Art. I, § 2 (supremacy of federal constitution), of the Washington Constitution; (b) that the supremacy of federal law is demonstrated by the "state railroad" cases, as illustrated by *United States v. California,* 297 U. S. 175, 80 L. Ed. 567, 56 S. Ct. 421 (1936), and *California v. Taylor,* 353 U. S. 553, 1 L. Ed. (2d) 1034, 77 S. Ct. 1037 (1957); and (c) that the doctrine of sovereign immunity is not applicable to the instant case.

Our conclusion that the judgment must be affirmed is based upon the following analysis.

FIRST: The state of Washington is acting in a governmental capacity when it operates the Puget Sound Ferry System by its statutory agent, the Washington Toll Bridge

Authority[3]. The operation is an integral part of the highway system; its operation is an exercise of a traditional and essential governmental function, although, at one time, a portion of the ferry system was operated by private enterprise. In *Riddoch v. State*, 68 Wash. 329, 335, 123 Pac. 450 (1912), this court held:

" . . . the state is inherently sovereign at all times and in every capacity. . . . If it may constitutionally take over any enterprise, though usually of the nature of a private business, the very taking over is an exercise of this sovereign power. It seems much more logical and much more consonant with the idea and genius of sovereignty that the enterprise thus taken over should be impressed with the sovereign character of the state than that the state should become hampered by the private character of the enterprise. The latter result is incompatible with the concept of sovereignty."

A ferry is a continuation of a public highway from one side of a body of water, over which it passes, to the other. It serves as a bridge and is part of the highway system. It has been held that the operation of a ferry by the state, or by a subdivision or agency of the state, is not subject to the federal transportation tax because the state is acting in its governmental capacity. *United States v. King County, Wash.*, 281 Fed. 686 (C. C. A. 9th; 1922); *United States v. State Road Department, Florida*, 255 F. (2d) 516 (C. A. 5th; 1958); *United States v. Washington Toll Bridge Authority*, 190 F. Supp., 95 (D.C.W.D. Wash., S. D.; 1960) (Currently on appeal to Court of Appeals for 9th Circuit.).

We hold that the authority is immune from tort liability except as immunity has been waived by statute, a question which we discuss later in this opinion. *Nelson v. Maine Turnpike Authority*, 157 Me. 174, 170 A. (2d) 687 (1961).

■ SECOND: The doctrine of a state's sovereign immunity from suit without its consent applies in actions in admiralty. In *Ex Parte State of New York, No. 1*, 256 U. S.

---

[3]W. E. Shipley: Anno. "Liability and suability, in negligence action, of state highway, toll road, or turnpike authority." 62 A. L. R. (2d) 1222 (1958).

490, 497, 500, 65 L. Ed. 1057, 41 S. Ct. 588 (1920), the court held:

"That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given: not one brought by citizens of another State, or by citizens or subjects of a foreign State, because of the Eleventh Amendment; and not even one brought by its own citizens, because of the fundamental rule of which the Amendment is but an exemplification. [Citing Authorities]

"*Nor is the admiralty and maritime jurisdiction exempt from the operation of the rule. . . .*

" . . .

"*We repeat, the immunity of a State from suit in personam in the admiralty brought by a private person without its consent, is clear.*

" . . .

" . . . It is not inconsistent in principle to accord to the States, which enjoy the prerogatives of sovereignty to the extent of being exempt from litigation at the suit of individuals in all other judicial tribunals, a like exemption in the courts of admiralty and maritime jurisdiction." (Italics ours.)

The following authorities follow this conclusion: *J. Ray McDermott & Co. v. Department of Highways, Louisiana*, 267 F. (2d) 317 (C. A. 5th; 1959), cert. den. 361 U. S. 914, 4 L. Ed. (2d) 184, 80 S. Ct. 259, 1 A. M. C. 761 (1959); *Broward County, Florida v. Wickman*, 195 F. (2d) 614 (C. A. 5th; 1952); *Sehlmeyer v. Romeo Co.*, 117 F. (2d) 996, 998 (C. C. A. 9th; 1941).

In 1 Edelman, Maritime Injury, The Jones Act, 63, 75 (1960), the rule is stated:

"A Jones Act case will not lie against a state as shipowner where the sovereign immunity has not been waived by the state."

In *Petty v. Tennessee-Missouri Bridge Comm.*, 359 U. S. 275, 3 L. Ed. (2d) 804, 79 S. Ct. 785 (1959), the court recog-

nized the doctrine that actions based on maritime torts against agencies of a state are not exceptions to the rule that a state cannot be sued in federal court unless it has waived immunity, and that "a waiver of immunity will not be lightly inferred."

The Tennessee-Missouri Commission, authorized by statutes of the respective states, was created, pursuant to the compact clause of the United States Constitution, Art. I, § 10, cl. 3, to build a bridge and to operate ferries across the Mississippi River. The compact, approved by Congress, contained a provision that the commission could "sue and be sued in its own name." A divided court held

". . . that the States accepting it [the 'sue-and-be-sued' clause of the compact] waived any immunity from suit which they otherwise might have." (p. 280)

The court said:

". . . where a public instrumentality is created with the right 'to sue and be sued' that waiver of immunity in the particular setting may be restricted to suits or proceedings of a *special character* in the state, not the federal, courts. . . ." (Italics ours.) (p. 277)

The *Petty* case, *supra*, supports our conclusion[4].

THIRD: *United States v. California*, 297 U. S. 175, 80 L. Ed. 567, 56 S. Ct. 421 (1936) (involving the federal Safety Appliance Act), and *California v. Taylor*, 353 U. S. 553, 1 L. Ed. (2d) 1034, 77 S. Ct. 1037 (1957) (involving the Railway Labor Act), do not support plaintiff's contentions.

The first case was an action brought by the United States against a state. Jurisdiction over such an action is not within the proscription of the eleventh amendment to the United States Constitution.[5]

---

[4] *Petty v. Tennessee-Missouri Bridge Comm., supra*, is discussed in 45 Iowa L. Rev. 621 (1960); 6 Wayne L. Rev. 252 (1960).

[5] "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." Eleventh Amendment, United States Constitution.

In the second case, the state of California intervened in an action against the National Railroad Adjustment Board; hence, the state voluntarily submitted itself to the jurisdiction of the federal court. As pointed out by the court in *Petty v. Tennessee-Missouri Bridge Comm., supra,*

" . . . this is an immunity which a State may waive at its pleasure (*Missouri v. Fiske,* 290 U. S. 18, 24) as by a general appearance in litigation in a federal court (*Clark v. Barnard,* 108 U. S. 436, 447-448) or by statute. *Ford Motor Co. v. Department of Treasury,* 323 U. S. 459, 468-470. . . ." (p. 276)

*South Carolina v. United States,* 199 U. S. 437, 50 L. Ed. 261, 26 S. Ct. 110 (1905), and *Ohio v. Helvering,* 292 U. S. 360, 78 L. Ed. 1307, 54 S. Ct. 725 (1934), are not apposite; both are actions by a state against the United States.

Our attention has not been directed to any decision in which a federal statute has been interpreted as granting an *individual* the right to sue a sovereign state without its consent, be it in federal or state court.

FOURTH:

"The right of individuals to sue a State, in either a federal or a state court, cannot be derived from the Constitution or *laws* of the United States. It can come only from the consent of the State. . . ." *Palmer v. Ohio,* 248 U. S. 32, 34, 63 L. Ed. 108, 39 S. Ct. 16 (1918). (Italics ours.)

In *American Tug Boat Co. v. Washington Toll Bridge Authority,* 48 Wn. (2d) 117, 119, 291 P. (2d) 668 (1955), this court recognized that the state has, by statute, granted certain conditional rights of action against its agency, the Washington Toll Bridge Authority.

This requires us to consider the statutes in detail in order to determine to what extent the state has waived its sovereign immunity.[6]

---

[6]Laws of 1961, chapter 136, § 1, by which the state consents to action against it for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation, has no application to the instant action. It should be noted that the statute does not " . . . affect any special statute relating to procedure for filing notice of claims against the state or any agency . . . "

■ The legislature of 1951 granted conditional rights of action against the Toll Bridge Authority. Laws of 1951, chapter 259, §§ 5-12. Having been enacted at the same time, the various sections of the act, as codified, must be considered as a whole.[7]

(a) LAWS OF 1951, CHAPTER 259, § 5 (RCW 47.60.200):

"Any consent to liability given under the provisions of this act [RCW 47.60.200-.270] shall create liability of the authority only and shall not create any general liability of the state."

This is a recognition by the legislature that the authority, as a state agency, had a pre-existing sovereign immunity. This section manifests an intention of the legislature to waive the sovereign immunity of the authority—not of the state—only to the extent set forth in "this act." RCW 47-.60.200-.270.

(b) LAWS OF 1951, CHAPTER 259, § 6 (RCW 47.60.210):

"The state consents to suits against the authority by seamen for injuries occurring upon vessels of the authority in accordance with the provisions of section 688, title 46, of the United States Code. The venue of such actions may be in the superior court for Thurston County or the county where the injury occurred."

■ This section gives seamen the right to sue the authority under the Jones Act. Venue of the action *may be* in the Superior Court for Thurston County or the county where the injury occurred. Whether a seaman may sue the authority in federal court is not before us. This section, however, is not a self-contained provision, as plaintiff contends, but is specifically limited (1) by RCW 47.60.200, quoted *supra*, confining liability to the authority; (2) by RCW 47.60.240, quoted *infra*, limiting the amount of damages recoverable; (3) by RCW 47.60.270, prohibiting maritime liens against vessels of the authority and execution or attachment upon a judgment against property of the author-

---

[7]Laws of 1951, chapter 259, § 4: "Sections 5 to 13, inclusive, of this act are added to chapter 47.60, R.C.W., derived from chapter 179, Laws of 1949."

ity; and (4) by RCW 47.60.250, quoted *infra*, requiring that claims be filed with the authority within thirty days after the time the claim accrues.

(c) LAWS OF 1951, CHAPTER 259, § 7 (RCW 47.60.220):

This section places upon the authority ". . . all the obligations, duties and rights of a common carrier of persons and property in its operation of ferries . . ." It does not apply to the instant case, for it treats with the authority's liability

". . . for loss or damage to property transported, and for personal injury or death *of persons transported.*" (Italics ours.)

(d) LAWS OF 1951, CHAPTER 259, § 8 (RCW 47.60.230):

"In case of . . . personal injuries . . . resulting from the operation of any ferry . . . by the authority, . . . any person shall, subject to and to the extent *hereinafter provided*, have a right of action against the authority for such . . . injury . . ." (Italics ours.)

By this section of the act, the state consents to suit against the authority by any person, including a seaman claiming under the general maritime doctrine of unseaworthiness. The right of action granted against the authority is specifically conditioned by the phrase, ". . . subject to and to the extent hereinafter provided . . ."

(e) LAWS OF 1951, CHAPTER 259, § 9 (RCW 47.60.240):

This section provides that the right of action extended by RCW 47.60.200 to RCW 47.60.270 shall be applicable to actions for damages for personal injury, resulting from operation of the ferries by the authority, to persons *other than shippers or passengers*, but

". . . any recovery of damages in such cases shall not exceed an amount equal to the limitations of the insurance carried by the authority to insure it against loss for such liability."

In a majority of jurisdictions it is held that the procurement of liability or indemnity insurance by a governmental unit has no effect upon its immunity from tort

liability.[8] We do not reach this question. RCW 47.60.240 is not, of itself, a waiver of immunity. It only limits the amount of recovery in the event plaintiff has *the right to sue* (RCW 47.60.250) and has, in fact, established the authority's liability. This section is indicative of the legislative intent to limit its waiver of immunity to the specific provisions of the act.

(f) LAWS OF 1951, CHAPTER 259, § 10 (RCW 47.60.250):

"As a condition to a recovery thereon, a verified claim against the authority growing out of such damages, loss, injuries or death must first be presented to the authority and filed with its secretary within thirty days after the time when such claim accrued. . . ."

 This section of the statute is the crux of the case before us. Since the act (Laws of 1951, chapter 259) must be construed as a whole, RCW 47.60.250 applies to the whole act, including RCW 47.60.210 and RCW 47.60.240.

There is a distinction between immunity from process, which goes to the question of jurisdiction, and immunity from liability, which deals with the substantive law. Here, the liability and the remedy are created by the same statute, and the limitations of the remedy must be treated as limitations of the liability. *In re Nueces County, Texas Road Dist. No. 4*, 174 F. Supp. 846 (1959).

We conclude, therefore, that the legislature intended to apply the requirement of the thirty-day verified claim statute (RCW 47.60.250) to all claims against the authority, including seamen's claims under the Jones Act or under the general maritime doctrine of unseaworthiness. We find nothing in the federal statutes or decisions that prevents this conclusion.

The judgment of dismissal is affirmed.

ALL CONCUR.

---

[8]The cases are collected in an annotation by R. D. Hursh—"Liability or indemnity insurance carried by governmental unit as affecting immunity from tort liability." 68 A. L. R. (2d) 1437 (1959).