712 A.2d 585

**Edward BUNCH, III, et al.**

v.

**Bishop L. ROBINSON.**

**No. 1754, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

July 1, 1998.

438

Joseph B. Espo (Brown, Goldstein & Levy, L.L.P., Baltimore, Richard B. Bardos, Ellicott City, and Larry Engelstein, Washington, DC, on the brief), for Appellants.

Michele J. McDonald, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Mark D. McCurdy, Asst. Atty. Gen., on the brief), Baltimore, for Appellee.

Marvin Krislov, Deputy Sol. of Labor, Alan H. Feldman, Associate Sol. for Special Appellate and Supreme Court Litigation, Nathaniel I. Spiller, Deputy Associate Sol., Ellen L. Beard, Senior Appellate Atty., U.S. Dept. of Labor; Frank W. Hunger, Asst. Atty. Gen, Lynne Ann Battaglia, U.S. Atty., Mark B. Stern, Robert M. Loeb, Attys., Appellate Staff, Civil Div., Dept. of Justice, Washington, DC, brief for the U.S. as Amicus Curiae.

Argued before DAVIS and HARRELL, JJ., and ROBERT F. FISCHER, Judge (retired), Specially Assigned.

DAVIS, Judge.

Appellant Edward Bunch, III, formerly a parole and probation officer, and appellants Henry Boulware and Charles Woods, currently parole and probation officers for the State of Maryland, filed claims, alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.*, and seeking monetary and injunctive relief in the United States District Court for the District of Maryland on April 7, 1995. After the federal suit was dismissed on December 11, 1996, appellants pursued the same claim in the Circuit Court for Baltimore City.

Secretary of the Maryland Department of Public Safety and Correctional Services, appellee Bishop Robinson, moved to dismiss appellants' amended complaint and memorandum. Pursuant to the motion and a reply filed in opposition thereto, the Circuit Court for Baltimore City conducted a hearing on September 8, 1997, after which it held the matter *sub curia.* The court issued its order and memorandum opinion granting the motion to dismiss, and appellants timely noted the instant appeal. On this appeal, appellants, joined by amicus, the United States, ask us to decide:

I.   Whether the Supremacy Clause of the United States Constitution requires the circuit court to enforce the FLSA as mandated by Congress.

II.   Whether the Eleventh Amendment immunity under the federal constitution is synonymous with state common-law immunity.

In addition to the issues raised jointly by appellants and in their brief, amici, the United States Department of Labor and the United States Department of Justice, additionally ask us to decide:

III.   Whether the proper avenue for State employees to enforce rights created by the FLSA is the State administrative grievance procedure when some of the remedies available under the FLSA are not available under the State grievance procedure.

We shall answer the first issue in the affirmative and the second and third issues in the negative. Accordingly, we shall reverse the decision of the trial court and remand the case for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

The underlying cause of action from which this appeal emanates was based on appellants' claim for compensation under the FLSA for being assigned duties that could not be accomplished in a forty-hour work week, but for which appellants were not paid overtime when their work week exceeded forty hours. Appellants Bunch, Boulware, and Woods were probation agents employed by the Division of Parole and Probation (DPP) of the Maryland Department of Public Safety and Correctional Services (Department). Appellee Robinson was the Secretary of the Department at the time of the proceedings in the lower court.

On April 5, 1994, prior to the FLSA claim, the Department terminated Bunch, charging him with incompetence and inefficiency in the performance of his duties. Bunch appealed the charges for removal and, after a hearing on the merits before the Office of Administrative Hearings (OAH) on September 9, 1994, the administrative law judge (ALJ) found that Bunch had violated certain sections of COMAR,[1] constituting sufficient cause for termination.

A final order adopting the findings, conclusions, and proposed decision of the ALJ that Bunch be removed from State service was issued on November 22, 1994; that order was sustained by the Circuit Court for Baltimore City. The circuit court's judgment was affirmed by this Court in a *per curiam* opinion dated March 25, 1997.

As stated above, on April 7, 1995, appellants filed suit in the United States District Court, seeking compensation under the FLSA for not receiving overtime pay for work exceeding forty hours per week. The district court, citing *Seminole Tribe of*

---

1. Code of Maryland Regulations.

*Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), dismissed appellants' lawsuit on December 11, 1996, holding that the court lacked subject matter jurisdiction as the FLSA did not abrogate the states' Eleventh Amendment immunity. Appellants thereafter filed suit in the Circuit Court for Baltimore City, reasserting the same claim that had been dismissed in the federal district court.

## THE CIRCUIT COURT'S DECISION

The Circuit Court for Baltimore City, in holding that the Commerce Clause of the United States Constitution does not give Congress the authority to abrogate common-law based state sovereign immunity, opined:

In the case before this [c]ourt, the [appellants'] FLSA claim is brought against [appellee] in his capacity as Secretary of the Maryland Department of Public Safety, and is therefore a suit against a State agency. This suit was brought under the express language of the 1974 amendments to the FLSA which imposed it on the states under the authority of the Interstate Commerce Clause.

Observing that the issue before the trial court had been decided by at least two jurisdictions since the Supreme Court's decision in *Seminole Tribe,* the court relied on a decision of the Dane County, Wisconsin Circuit Court, *German v. Wisconsin Dep't of Transp.,* Case No. 96–CV–1261 (March 11, 1997), wherein that court held:

It would be anomalous if the "States' rights" justices who authored *Seminole Tribe,* and who vigorously dissented in *Garcia,* acted to uphold [the] States' Eleventh Amendment immunity from suit but, at the same time, affirmed congressional authority to overcome a State's own sovereign immunity under its State constitution.

*German,* slip op. at 5 n. 5. The Circuit Court for Baltimore City continued, in its memorandum opinion, concluding that, although the Maryland Constitution does not expressly have such a provision [comparable to Wisconsin's Constitution], this concept that the legislature must decide where and when suits can be brought against its State is deeply rooted

in Maryland's common law doctrine of State sovereign immunity. "Parties having claims or demands against [the State of Maryland], must present them through another department of the Government—the Legislature—and cannot assert them by suit in the courts. *State v. B & O RR Co.*, 34 Md. 344, 374 (1871)."

The trial court, in its memorandum opinion, ultimately held:

... Applying the holding of *Seminole Tribe*, every jurisdiction that has considered the issue has concluded that Congress lacked authority, in enacting amendments to the FLSA under the Commerce Clause, to abrogate Eleventh Amendment immunity. Since Congress has not abrogated the States' Eleventh Amendment sovereign immunity under an appropriate exercise of congressional authority, it logically follows that neither has Congress altered the States' common-law sovereign immunity with respect to a FLSA claim.

Although this [c]ourt holds that this action must be dismissed, this conclusion does not mean that the FLSA does not apply to the State. It only means that a suit for damages against the State cannot be maintained in State or Federal Court. Further, this [c]ourts' [sic] ruling does not leave the State employees with inadequate means of pursuing their complaints. The [appellants], as State employees, have access to an adequate and available administrative remedy to redress their claims. The General Assembly structured a multi-tiered grievance mechanism which covers disputes between the employee and employer about the interpretation of a personnel policy or regulation adopted by the Secretary. The purpose of the employee grievance procedure was to provide employees a means of seeking redress for alleged wrongs and was created to centralize and streamline cases involving State employees' grievances arising from their employment.

(Citations omitted.)

Based on the above holding, the Circuit Court for Baltimore City granted appellee's motion to dismiss and this appeal followed.

## STANDARD OF REVIEW

We begin our analysis by setting forth the appropriate standard of review. In considering a motion to dismiss made pursuant to MARYLAND RULE 2–322(b), a court must assume the truth of all well-pleaded material facts and all inferences that can be drawn from them. *Rossaki v. NUS Corp.*, 116 Md.App. 11, 18, 695 A.2d 203 (1997); *Society of Am. Foresters v. Renewable Natural Resources Found.*, 114 Md.App. 224, 232, 689 A.2d 662 (1997); *Simms v. Constantine*, 113 Md.App. 291, 294, 688 A.2d 1 (1997). The grant of a motion to dismiss is proper if the complaint does not disclose, on its face, a legally sufficient cause of action. *Rossaki*, 116 Md.App. at 18, 695 A.2d 203; *Society of Am. Foresters*, 114 Md.App. at 232, 689 A.2d 662; *Simms*, 113 Md.App. at 294, 688 A.2d 1. The complaint need not specify with minute particularity that which ultimately need be proved; rather, it is enough that the complaint state with reasonable certainty the cause of action. *Simms*, 113 Md.App. at 295, 688 A.2d 1. When reviewing the grant of a motion to dismiss, we must determine whether the trial court was legally correct in determining that the complaint did not set forth a legally sufficient cause of action. *Rossaki*, 116 Md.App. at 18, 695 A.2d 203.

## DISCUSSION

In this case, essentially we are asked to decide whether the FLSA may be applied to a unit of the state government and enforced in state court. For some years following the Supreme Court's decision in *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) (subjecting a local government to the FLSA), such application was, for the most part, constitutionally uncontroverted. In a recent line of cases culminating in *Printz v. United States*, —— U.S. ——, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), however, the Supreme Court has imposed limits, either through the Commerce Clause or the Tenth and Eleventh Amendments, on the power of Congress to enact legislation that affects state and local governments. *See, e.g., Seminole*

*Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (Eleventh Amendment); *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (Commerce Clause); *New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (Tenth Amendment). These cases recognize that state sovereignty is a valued and well-settled concept in the law, yet do not specifically overrule *Garcia.* It is the conflict between state sovereign immunity and Congress's desire to regulate wages and work hours pursuant to its powers under the Commerce Clause that has created the quagmire of conflicting interests into which this case falls.

## I

Appellants and amicus argue that, pursuant to the Supremacy Clause of the United States Constitution, the FLSA precludes the State's, i.e., appellee's, common-law defense of sovereign immunity and, therefore, the circuit court erred when it declined to consider the FLSA claims. Appellee counters, asserting that the circuit court properly held that the State's common-law sovereign immunity bars appellants' FLSA claims in State court because the Commerce Clause, the source of power behind the enactment of the FLSA, is insufficient constitutional authority to abrogate state sovereign immunity. Despite the imperative interest of state sovereign immunity, we agree with appellants.

Neither appellants nor appellee contest that the United States Congress expressly intended for the FLSA to apply to state employers. The minimum wage and overtime provisions of the FLSA apply to any "[e]mployer." 29 U.S.C. §§ 206 and 207. The definition of "employer" includes a "public agency." 29 U.S.C. § 203(d). "Public agency" is defined to include "the government of a State." 29 U.S.C. § 203(x). Further, a covered "employee" includes, with certain exceptions not applicable here, "any individual employed by a State." 29 U.S.C. § 203(e)(2)(c).

The Supremacy Clause [2] of the United States Constitution provides:

> The Constitution, and the Laws of the United States which shall be made in pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, *shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby,* any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2 (emphasis added). By its terms, the Supremacy Clause speaks directly to state judges, who "shall be bound" (1) to recognize the supremacy of federal law, like the FLSA, and (2) to resolve any conflicts between state and federal law in favor of federal law. The Supreme Court, in a unanimous decision, has stated that "[f]ederal law is enforceable in state courts ... because the Constitution and laws passed pursuant to it are as much law in the States as laws passed by the state legislature." *Howlett v. Rose,* 496 U.S. 356, 367, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). "State courts must interpret and enforce faithfully the 'supreme Law of the Land' and their decisions are subject to review by [the Supreme] Court." *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 29, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990).

▇ Indeed, the duty of state judges to apply federal law is inherent in our nation's constitutional system of government. *See, e.g., Testa v. Katt,* 330 U.S. 386, 389–90, 67 S.Ct. 810, 91 L.Ed. 967 (1947); *Martin v. Hunter's Lessee,* 1 Wheat. 304, 14 U.S. 304, 340, 4 L.Ed. 97 (1816). Consequently, when Congress acts within its enumerated powers to create a federal

---

2. It is suggested at pages 13 and 14 of appellee's brief that appellants' argument before the circuit court was not based on the Supremacy Clause, nor was the court's opinion bottomed on that constitutional provision; therefore, the issue is not preserved. MD. RULE 8–131. The core issue before us is whether federal or state law takes priority in the instant controversy. The Supremacy Clause is necessarily implicated in the resolution of that issue irrespective of whether it was expressly invoked by the parties or the trial court.

cause of action that imposes liability on the states, state courts of general jurisdiction may not refuse to hear the federal claim. *See id.* (reversing a state court's refusal to enforce the double damage provisions of the Emergency Price Control Act).

■ The State's assertion of sovereign immunity in this case does not alter the duty of the State court to enforce federal law that imposes liability on the states when that law has been validly enacted pursuant to Congress's enumerated powers. Notably, the *Howlett* Court made clear that a state may not refuse to hear a federal cause of action by relying upon state law based sovereign immunity or by claiming a lack of jurisdiction due to sovereign immunity. *Howlett,* 496 U.S. at 378–83, 110 S.Ct. 2430.

■ In *Howlett,* the Court was asked to decide whether common-law sovereign immunity was available to a state school board to preclude a claim under 42 U.S.C. § 1983.[3] The state court had dismissed the lawsuit on grounds that the school board, as an arm of the state, had not waived its sovereign immunity in § 1983 cases. The Supreme Court noted that the dismissal in state court raised concern that the state may be evading federal law and discriminating against federal causes of action. The Supreme Court held that state common-law immunity could not defeat a claim under a federal statute:

> Federal law is enforceable in state courts not because Congress has determined that federal courts would otherwise be burdened or that state courts might provide a more convenient forum—although both might well be true—but because the Constitution and law passed pursuant to it are as much laws in the States as laws passed by the state legislature.

---

**3.** 42 U.S.C. § 1983 creates a remedy for violations of rights committed by persons acting under the color of state law. *Howlett,* 496 U.S. at 358, 110 S.Ct. 2430.

*Howlett,* 496 U.S. at 367, 110 S.Ct. 2430. Accordingly, a state may refuse to enforce a federal statute against a state agency under very limited circumstances. *See id.* at 369–72, 110 S.Ct. 2430. "A state court may not deny a federal right, when the parties are properly before it, in the absence of a 'valid excuse.'" *Id.* at 369, 110 S.Ct. 2430 (quoting *Douglas v. New York, N.H. & H.R. Co.,* 279 U.S. 377, 49 S.Ct. 355, 73 L.Ed. 747 (1929)). An excuse that is "inconsistent with or violates federal law is not a valid excuse." *Howlett,* 496 U.S. at 371, 110 S.Ct. 2430. "When Congress, in the exertion of the power confided to it by the Constitution, adopted the act, it spoke for all the people and all the States and thereby established a policy for all." *Id.*

Relying on *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), and *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), the *Howlett* Court expressly held that state common-law immunity is eliminated by acts of Congress in which Congress expressly makes the states liable. *Howlett,* 496 U.S. at 376, 110 S.Ct. 2430. In that regard, the Court reasoned that,

> as to persons that Congress subjected to liability, individual States may not exempt such persons from federal liability by relying on their own common-law heritage. If we were to uphold the immunity claim in this case, every state would have the same opportunity to extend the mantle of sovereign immunity to "persons" who would otherwise be subject to § 1983 liability. States would then be free to nullify for their own people the legislative decisions that Congress has made on behalf of all the people.

*Id.* at 383, 110 S.Ct. 2430.

Similarly, in *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), and *Reich v. Collins,* 513 U.S. 106, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994), the Supreme Court held that, when states collect taxes in violation of federal law, an assertion of state sovereign immunity does not bar a claim for retroactive monetary relief in state court. Specifically, the Court in

*McKesson* held that the Due Process Clause required that the state, which had collected taxes in violation of the Commerce Clause, provide a retroactive monetary remedy. Further, as indicated *supra,* the Court explained that, to secure "national uniformity" of federal law, state courts "must interpret and enforce faithfully the 'supreme law of the land.'" *McKesson,* 496 U.S. at 29, 110 S.Ct. 2238. In *Reich,* the Court held that

> a denial by a state court of a recovery of taxes exacted a violation of the laws or Constitution of the United States by compulsion is itself in contravention of the Fourteenth Amendment . . . the sovereign immunity States traditionally enjoy in their own courts notwithstanding.

*Reich,* 513 U.S. at 109–10, 115 S.Ct. 547. In so holding, the Court contrasted the state's amenability to suit in state court, notwithstanding an assertion of sovereign immunity, to the Eleventh Amendment bar against suits for tax refunds in federal court. *Id.* at 110, 115 S.Ct. 547.

In *Hilton v. South Carolina Pub. Rys. Comm'n,* 502 U.S. 197, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991), the Supreme Court held, as it had in *Howlett,* that the Supremacy Clause requires that federal law be enforced in all state courts and that federal law supersede any state laws that interfere with the federal law. In *Hilton,* a six-to-two decision with one justice not participating, the Court examined whether the State Public Railways Commission could be sued in state court for a Federal Employer's Liability Act (FELA) claim, when the Eleventh Amendment has provided the states with protection against FELA suits in federal courts. First, the Court observed that the notion of symmetry of state immunity from liability, that is, immunity in both state and federal courts, had many commendable aspects. Nevertheless, the Court was not persuaded to grant immunity in state court based solely on the positive aspects of symmetry with Eleventh Amendment immunity. Rather, it focused on *stare decisis* and on the fact that the Court for twenty-eight years had interpreted the FELA to include claims against state-owned railroads. Additionally, in *Welch v. Texas Dept. of Highways & Pub. Transp.,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987), the Court

■■■■■■■■■

had held that the Eleventh Amendment did not void state immunity in federal court for Jones Act claims. Because of the *Welch* decision and the fact that the Jones Act incorporated the FELA remedial scheme, the plaintiffs in *Hilton* dismissed the federal action and filed in state court. Accordingly, the Court adhered to its precedent that states were liable for FELA claims while noting that the *Welch* decision did not address

> the most vital consideration of our decision today, which is that to confer immunity from state-court suit would strip all FELA and Jones Act protection from workers employed by the States[.]

*Hilton,* 502 U.S. at 203., 112 S.Ct. 560  Because the FELA imposed liability on the states, the Court concluded that the Supremacy Clause made it fully enforceable against the states in state courts. The *Hilton* opinion did not specifically discuss the conflict between the Supremacy Clause and state sovereign immunity, but it cited *Howlett* in support of its conclusion that the federal law should be enforced in state court. Neither *Howlett* nor *Hilton* has been overruled by the Supreme Court, and we believe they, along with other cases to be cited *infra,* control the decision in this case.

In *Jacoby v. Arkansas Dep't of Education,* 331 Ark. 508, 962 S.W.2d 773 (1998), the Supreme Court of Arkansas considered the same issue and reached the same conclusion as we do in the instant case. There, the court, relying heavily on *Hilton* and *Howlett,* held that the Eleventh Amendment poses no bar to the assertion of FLSA claims in state court and that, under the Supremacy Clause, the state is not immune from suit in state court for claims under the FLSA. In so holding, the court noted that it did "not deem the fact that *Seminole Tribe v. Florida,* [517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ] has struck down state liability for FLSA claims in federal courts as determinative of state liability in its own courts." *Jacoby,* 962 S.W.2d at 777. Further, the court stated:

> The FLSA remains valid law protecting employees and empowering them to enforce claims for unpaid wages. This

law remains the law throughout the land, and state sovereign immunity cannot impede it.

*Id; see also Wilson–Jones v. Caviness*, 99 F.3d 203, 211 (6th Cir.1996) (stating in *dicta* that "State employees may sue in state court for money damages under the FLSA, and a state court would be obligated by the Supremacy Clause to enforce federal law").

Noting a policy reason in support of its conclusion, the *Jacoby* court opined:

There is, of course, a uniformity consideration inherent in the principle of supreme law of the land. If the matter is left to the individual states to determine whether the state sovereign immunity offers state employees sufficient protection, the result may well be a patchwork quilt of FLSA enforcement with some state courts permitting FLSA claims against state employers and other state courts declining to do so.

*Jacoby*, 962 S.W.2d at 777. The court in *Jacoby* also noted that several state appellate courts have not been persuaded that the Supremacy Clause preempts the immunity of a state sovereign against suit in its own courts.[4] Those cases, however, as noted in *Jacoby*, were decided before *Hilton* and *Howlett*.

The *Jacoby* court also did not find persuasive "some ambiguous language in the *Seminole Tribe* opinion concerning 'unconsenting states' [that] has been seized upon as support for

---

4. *Jacoby*, 962 S.W.2d at 777 (citing *Morris v. Massachusetts Maritime Academy*, 409 Mass. 179, 565 N.E.2d 422 (1991); *Lyons v. Texas A & M Univ.*, 545 S.W.2d 56 (Tex.Civ.App. 14 Dist.1977); *Mossman v. Donahey*, 46 Ohio St.2d 1, 346 N.E.2d 305 (1976); *Weppler v. School Bd.*, 311 So.2d 409 (Fla.App. 3 Dist.1975); *Board of Comm'rs v. Splendour Shipping & Ent. Co.*, 255 So.2d 869 (La.App. 4 Cir.1972); *Gross v. Washington State Ferries*, 59 Wash.2d 241, 367 P.2d 600 (1961); *Maloney v. New York*, 3 N.Y.2d 356, 165 N.Y.S.2d 465, 144 N.E.2d 364 (1957)). Among those cases, *Jacoby* also cited a Maryland case, *Widgeon v. Eastern Shore Hosp.*, 300 Md. 520, 479 A.2d 921 (1984). A review of that case, however, reveals that it does not stand for the proposition that state sovereign immunity cannot be preempted by the Supremacy Clause.

the proposition that state consent is a prerequisite to state liability in its own courts for violation of a federal right." *Jacoby*, 962 S.W.2d at 778 (citing Carlos Manuel Vazquez, *What Is Eleventh Amendment Immunity?* 106 Yale L.J. 1683, 1717 (1997)). The court also was unpersuaded by one-sentence dictum in *Hess v. Port Authority Trans–Hudson Corp.*, 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994), that the Eleventh Amendment shields states from suit in federal court "leaving parties with claims against a State ... *if the State permits*, in the State's own tribunals." *Hess*, 513 U.S. at 39, 115 S.Ct. 394 (emphasis added). The court stated that the genesis of that line of reasoning was in *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), and the Court's allusion in that 108–year–old case to the principle that a sovereign cannot be sued in its own courts without its consent. *Hans*, 134 U.S. at 17, 10 S.Ct. 504. The *Jacoby* court "view[ed] such passing references, and even the language in *Hans*, as inconsequential when confronted with the full analysis of *Hilton*, bolstered by *Howlett*, where the issue of the Supremacy Clause was met head-on." We agree.

## B

Appellants also rely on *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), for the proposition that the FLSA may be enforced in a state court action by a private party against a state entity. *Garcia* examined whether the Commerce Clause of the United States Constitution "empower[ed] Congress to enforce the minimum wage and overtime provisions of the FLSA against the States...." *Garcia*, 469 U.S. at 530, 105 S.Ct. 1005. After extensive analysis, the Court held unequivocally that Congress was so empowered, despite federalism objections.

By contrast, appellee cites *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), for the proposition that Congress lacks the authority to abrogate state sovereign immunity in state court when acting pursuant to its Commerce Clause powers. As indicated by our previous discussion of *Howlett* and *Hilton*, and now *Garcia*, we are not

persuaded by appellee's position. In *Seminole Tribe,* the Supreme Court held that Congress lacked authority, under the Commerce Clause, to abrogate the sovereign immunity given to the states pursuant to the Eleventh Amendment of the United States Constitution. *Seminole Tribe,* 116 S.Ct. at 1131. Appellants concede that *Seminole Tribe's* holding has been consistently applied to bar FLSA claims against the states in *federal* court. The court below recognized that the Eleventh Amendment itself was inapplicable to state courts, yet it reasoned, based on *Seminole Tribe,* that Eleventh Amendment jurisprudence was informative in any state sovereign immunity analysis. Accordingly, the lower court found that "the Commerce Clause of the constitution does not give Congress the authority to abrogate common-law state sovereign immunity" in state court. The trial court's conclusion was in error.

Besides *Seminole Tribe,* the trial court and appellee rely on several trial court cases from other jurisdictions to support the proposition that Congress lacked sufficient authority, pursuant to its Commerce Clause powers, to abrogate state sovereign immunity in state court. *See German v. Wisconsin Dept. of Transp.,* Case No. 96–CV–1261 at 5, n. 5 (Wis.Cir.Ct. Mar. 8, 1997) ("It would be anomalous if the 'States' rights' justices who authored *Seminole Tribe,* and who had vigorously dissented in *Garcia,* acted to uphold [the] States' Eleventh Amendment immunity from suit but, at the same time, affirmed congressional authority to overcome a state's own sovereign immunity under its state constitution."); *Alden v. State of Maine,* Civil No. CV–96–751 (Me.Super.Ct. July 21, 1997). Preliminarily, we note that these trial court decisions are not Maryland cases and are not binding precedent on any court. Furthermore, *Alden* is on appeal to the Supreme Court of Maine. *Alden v. Maine,* No. CUM 97–446.[5]

Nevertheless, the trial court held that,

---

**5.** In its brief, appellee also cites trial court decisions, one from New Jersey and the other from New Mexico. Both are on appeal in their

[s]ince Congress has not abrogated the State's Eleventh Amendment sovereign immunity under an appropriate exercise of congressional authority, it logically follows that neither has Congress altered the State's common-law sovereign immunity with respect to a FLSA claim.

In so holding, the Circuit Court for Baltimore City reasoned that *Garcia* was no longer viable authority, thereby preemptively overturning Supreme Court precedent even though the Supreme Court has not overruled its decision in *Garcia*.

Appellee argues, as the trial court concluded, that *Garcia* is no longer good law. For that proposition appellee relies heavily on *Printz v. United States*, 521 U.S. 98, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), *New York v. United States*, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), and *Seminole Tribe*. Appellee's position essentially is flawed as those cases do not overrule *Garcia*, which directly applies in this case. Therefore, we agree with appellants' contention that the trial court's decision to disregard the Supreme Court precedent of *Garcia* was in error. The Supreme Court has clearly directed that,

> [i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the U.S. Supreme Court] the prerogative of overruling its own decisions.

*Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

In *West v. Anne Arundel County*, 137 F.3d 752, 760 (4th Cir.1998), the Fourth Circuit recently rejected appellee's argument. There, the court held, as we observe here, that neither *Printz* nor *New York* purports to overrule *Garcia*. The court also noted that, in a case decided the same term as *Printz*, the Supreme Court was presented with an opportunity particularly suited to overruling *Garcia* and it did not. Rather, it

respective states. *Whittington v. State of Mexico Dep't of Safety*, No. 19–065; *Allen v. Fauver*, No. A–395–97T5 (N.J.App.Div.).

enforced the FLSA against a local government agency without addressing the constitutional question. *See West,* 137 F.3d at 760 (citing *Auer v. Robbins,* 519 U.S. 452, ——, 117 S.Ct. 905, 909, 137 L.Ed.2d 79 (1997)). Finally, the court emphasized that "lower federal courts have repeatedly been warned about the impropriety of preemptively overturning Supreme Court precedent" as the lower court did with *Garcia* in the instant case. *See West,* 137 F.3d at 760 (citing e.g., *Agostini v. Felton,* 521 U.S. 203, ——, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997)).

Appellee also argues that, even if Congress had the authority to abrogate state immunity, the FLSA may not be applied to the states because it is contrary to the Tenth Amendment. This argument arises from appellee's interpretation of *Seminole Tribe* that the Supreme Court has retreated from the idea that federal intrusion upon the states' sovereign immunity is constitutionally permissible. In *Garcia,* though, the Court held that nothing in the "overtime and minimum wage requirements of the FLSA is destructive of state sovereignty or violative of any constitutional provision." *Garcia,* 469 U.S. at 554, 105 S.Ct. 1005. Therefore, in light of *Garcia's* continued viability, we disagree with appellee.

Under *Agostini, Rodriguez,* and *West,* no court other than the Supreme Court can overrule *Garcia* and find that the FLSA does not apply to state entities in state court. Yet, the circuit court effectively overruled *Garcia* based on the court's own reading of *Seminole Tribe.* Accordingly, we hold that the circuit court erred in granting appellee's motion to dismiss.

## II

Appellants next assert that the Eleventh Amendment constitutionally bars suit against a state in federal court but is inapplicable to suits against a state in state court. They concede, therefore, that dismissal of the original action by the federal district court was proper under the Eleventh Amendment but argue that the dismissal does not affect the subse-

quent action in the instant case filed in the Circuit Court for Baltimore City. We agree with appellants.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. A partial basis for this argument comes from the Supreme Court's statement that "as we have stated on many occasions, 'the Eleventh Amendment does not apply in state courts.'" *Hilton,* 502 U.S. at 204–05, 112 S.Ct. 560.[6] The Court of Appeals of Maryland reached a similar conclusion in *Widgeon v. Eastern Shore Hosp.,* 300 Md. 520, 479 A.2d 921 (1984). There, the Court stated that an "Eleventh Amendment argument attacks the jurisdiction of the *federal* court under the United States Constitution." *Widgeon,* 300 Md. at 537, 479 A.2d 921 (emphasis added).

▮▮▮ Furthermore, the language of Article III also supports appellants' argument that the Eleventh Amendment is applicable to state sovereign immunity only in federal courts. The phrase in Article III, "Judicial power of the United States," created the federal judiciary, and the Eleventh Amendment language describing the courts whose jurisdiction is affected by the Amendment is identical. The Eleventh Amendment addresses the susceptibility of a state to suit in federal court, not the general immunity of a state from private suit. Therefore, we hold that the trial court erred by applying Eleventh Amendment immunity of a state from suit in federal court to the question of state sovereign immunity in state court.

---

**6.** *See also Will v. Michigan Dep't of State Police,* 491 U.S. 58, 63–64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("the Eleventh Amendment does not apply to state courts"); *Maine v. Thiboutot,* 448 U.S. 1, 9 n. 7, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (stating that an action brought in state court does not present an Eleventh Amendment question because the Amendment only restrains the power of the federal judiciary).

Despite the apparent prohibition of the Eleventh Amendment's applicability in state courts, the lower court and appellee heavily rely on the Supreme Court's decision in *Seminole Tribe* for the proposition that the Eleventh Amendment reflects a broad principle of immunity and not only a limitation of federal court jurisdiction. In *Seminole Tribe,* though, the Supreme Court addressed the abrogation of state sovereign immunity in federal courts and recognized that *federal* suits against states without their consent were not contemplated by the Constitution's establishment of federal judicial power. *See Seminole Tribe,* 517 U.S. at 54, 116 S.Ct. 1114. The Court stated that "[i]t was well established ... that the Eleventh Amendment stood for the constitutional principle that state sovereign immunity limited the federal courts' jurisdiction under Article III." *Id.* at 63, 116 S.Ct. 1114. The Supreme Court's broad language in *Seminole Tribe* supports the assertion that Congress cannot use Article I to expand the scope of the federal courts' Article III jurisdiction. It does not support, however, appellee's argument that the Court intended to bar a suit against a state in state court under the coverage of the Eleventh Amendment.

■ Subsequent to both *Seminole Tribe* and the circuit court's memorandum opinion in this case, the Supreme Court of Arkansas, in *Jacoby,* also addressed the applicability of the Eleventh Amendment to a state court action involving potential state liability under the FLSA. The court, noting that the U.S. Supreme Court "emphatically" had stated in *Hilton* that the Eleventh Amendment does not apply to state courts, concluded as follows:

We deem it well nigh impossible, in the face of this clear statement, for this court to accept the ... argument that the Eleventh Amendment provides immunity in state courts as well. We hold that the Eleventh Amendment does not grant states immunity in their own courts, as the Court's pronouncement in *Hilton* makes abundantly clear. We reiterate that by its own terms the Eleventh Amendment is limited to the judicial power of the United States.

*Jacoby,* 962 S.W.2d at 775. We agree with the Supreme Court of Arkansas's conclusion that the Eleventh Amendment only applies to state sovereign immunity in federal court.

· Appellee and the lower court misconstrue *Seminole Tribe* as affecting state sovereign immunity in state court actions when it actually was a reinforcement of a state's right not to be sued in federal courts without its consent. The circuit court reasoned that if Congress is barred from use of the Commerce Clause to abrogate state sovereign immunity in federal court, then this same authority upon which the FLSA was enacted may not serve as the basis for abrogation of state immunity in its own courts. Whether Congress has insufficient authority to abrogate immunity conferred by the Eleventh Amendment is irrelevant to the abrogation of state common-law immunity in state court for an FLSA claim when, as in this case, the Supreme Court specifically has held that the FLSA applies to the states. *Seminole Tribe* neither overruled *Garcia,* nor repudiated the prior law from *Hilton* regarding the inapplicability of the Eleventh Amendment to state court actions. We conclude, therefore, that the trial court erred in its application of *Seminole Tribe* because Congress's inability to abrogate state sovereign immunity in federal court under its Commerce Clause authority is not determinative of Congress's ability to abrogate state common-law sovereign immunity in state court.

The trial court also based its conclusion on the decisions of two trial courts in Maine and Wisconsin that held that Congress did not have power under the Commerce Clause to abrogate state sovereign immunity in state court. *See Alden v. Maine,* Civil No. CV–96–751 (Me.Sup.Ct. July 21, 1997); *German v. Wisconsin Dep't of Transp.,* No. 96–CV–1261 (Wis.Cir.Ct. Mar. 8, 1997). In light of the recent decision of the Supreme Court of Arkansas in *Jacoby* and U.S. Supreme Court authority cited therein, we find the two trial court decisions relied on by the court below to be unpersuasive. In *Jacoby,* the court found that the U.S. Supreme Court's decision in *Seminole Tribe* that Congress could not use the Commerce Clause to abrogate state sovereign immunity in federal court was not determinative of the state's immunity in

state court. *See Jacoby,* 962 S.W.2d at 777. As discussed *supra,* the court reasoned, citing the Supreme Court decisions in *Hilton* and *Howlett* for support, that Congress's authority to enforce the FLSA right in state court was intact because the Supremacy Clause, as the supreme law of the land, trumped state common-law sovereign immunity. *See id.* at 778. As a result, we find unpersuasive appellee's argument that equal treatment of Eleventh Amendment immunity and state sovereign immunity is consistent with Supreme Court jurisprudence. The circuit court, therefore, erred by failing to apply binding Supreme Court precedent holding that Eleventh Amendment immunity and state common-law immunity are not synonymous.

In *Hilton,* the Court analyzed whether a state could be sued in state court for a FELA claim. It ruled that the Supremacy Clause made the FELA fully enforceable in state court because the statute had consistently been construed as imposing liability on the states. While recognizing that symmetry regarding liability in state and federal courts "has much to commend it," it does not "override just expectations which themselves rest upon the predictability and order of *stare decisis.*" *Id.* at 206, 112 S.Ct. 560. In other words, as long as the Supreme Court does not overrule *Garcia, stare decisis* takes precedence over any desire for symmetry between federal and state liability and, therefore, the FLSA applies to the states as did the FELA in *Hilton.*

Also, because of the Supreme Court's ruling in *Howlett,* we find no persuasive basis in the symmetry argument propounded by appellee. In *Howlett,* the Court stated that the individual states may not rely on state common-law sovereign immunity to exempt from federal liability persons whom Congress subjected to liability. *See Howlett,* 496 U.S. at 382, 110 S.Ct. 2430. Instead, the symmetry of application of federal law among the states takes precedence because without it, "[s]tates would then be free to nullify for their own people the legislative decisions that Congress has made on behalf of all the People." *Id.* The trial court's decision in the instant case to apply Eleventh Amendment principles to state common-law

immunity, though commendable in its desire to achieve symmetry, was not rational because *Hilton, Howlett,* and *Garcia* continue to be viable and mandate that *stare decisis* be used to apply the FLSA to the states.

Indeed, it makes sense to allow FLSA claims in state court, despite the defense of state sovereign immunity, while the same FLSA claim is barred in federal court pursuant to the Eleventh Amendment. The power of the Commerce Clause, as one part of the Constitution, should not give rise to a federal statute that abrogates another portion, i.e., the Eleventh Amendment, of the very same Constitution. On the other hand, the Supremacy Clause clearly allows properly enacted federal law to supersede state law.

## III

Finally, the circuit court asserted that rights for state employees created by the FLSA could be enforced through the state administrative grievance process.[7] At oral argument before us, when asked about the adequacy of the State grievance procedure, appellee's counsel responded that appellants could "bring it to the attention of the Department of Labor and have [them] sue the State of Maryland in federal court." Appellants responded to the same inquiry, asserting that the Supremacy Clause would not require a court of limited jurisdiction to hear "cases of a type it would not ordinarily hear, but the circuit court being a court of general jurisdiction ... being adequate for the job." We are not satisfied that the adequacy of the State grievance procedure, including permissible appeals, has been sufficiently developed, either in the briefs of the parties or oral argument, to allow this Court to give the issue proper consideration. To the extent that the issue has been raised and discussed (particularly in view of the significance accorded it by the circuit court), we shall endeavor to address the matter. We hasten to add, however, that the adequacy of the State administrative remedy is ancillary only

---

7. Although appellants' and appellee's briefs are devoid of any mention of this issue, amicus addresses the point in the body of its brief.

and is not dispositive of the central issue, i.e., whether state sovereign immunity is preempted by federal law, specifically the FLSA.

In light of our previous discussion on the Supremacy Clause and the FLSA's express extension of liability over the states, we conclude that the State's administrative grievance process is preempted so far as it is inconsistent with properly enacted federal law. *See, e.g., Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (holding that a Wisconsin notice-of-claim statute did not apply to federal civil rights actions brought in state court under 42 U.S.C. § 1983 because the notice-of-claim requirements were preempted as inconsistent with federal law).

The grievance process is inconsistent with the FLSA in many ways. The FLSA provides for liquidated damages and attorney's fees (29 U.S.C. § 216(b)), whereas the grievance process remedies as set forth in MD.CODE, STATE PERS. & PENS. (SP & P), § 12–402, do not provide for such remedies. Additionally, the limitations period for asserting a claim through the administrative grievance process is twenty days, SP & P § 12–203, whereas, the FLSA provides for a two-year statute of limitations. 29 U.S.C. § 255. In that regard, the *Felder* opinion stated that,

> where state courts entertain a federally created cause of action, the "federal right cannot be defeated by the forms of local practice...." Under the Supremacy Clause of the Federal Constitution, "[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law," for *"any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield."*

*Felder,* 487 U.S. at 138, 108 S.Ct. 2302 (emphasis added).

## CONCLUSION

The weight of authority favors appellants in this matter. The FLSA may be enforced against appellee, the State employer, only in State court and is viable by virtue of

■

the Supremacy Clause. Nevertheless, we do not view our holding today as supporting the notion that Congress has unlimited authority under the Commerce Clause to require state courts to enforce federal rights against a state government. The plain language of the FLSA and the clear weight of U.S. Supreme Court authority, however, lead us to conclude that the FLSA remains viable and that its enforcement in state court has not been foreclosed.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**