Argued and submitted February 26, affirmed April 16, 1997

Joey ORTEGA,
*Appellant,*

*v.*

PORT OF PORTLAND
and Colby Richardson,
*Respondents.*

(9509-06299; CA A91279)

936 P2d 1037

Kimberly Chaput argued the cause for appellant. With her on the briefs was Pozzi Wilson Atchison.

Lisa Lear argued the cause for respondents. With her on the brief were Douglas R. Andres, Karen M. Vickers, and Bullivant, Houser, Bailey, Pendergrass & Hoffman.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Plaintiff appeals from the dismissal of his actions for negligence, based on general maritime law, against the Port of Portland.[1] The trial court, on summary judgment, concluded that, because plaintiff had received benefits from his employer under the federal Longshore and Harbor Workers' Compensation Act (LHWCA), 33 USC sections 901 *et seq*, his "third-party" action against the Port was precluded under the Oregon Tort Claims Act. ORS 30.265(3)(a). We affirm.

The material facts were, for purposes of summary judgment, undisputed. Plaintiff worked as a rigger for Cascade General, Inc., which performed contract ship repair services. On June 28, 1994, as plaintiff was working on the vessel M/V Blue Ridge[2] at the Swan Island Ship Yard, he was injured because of the negligence of defendant Richardson, an employee of the defendant Port. In particular, as plaintiff and other riggers were removing anchor rollers from the Blue Ridge's deck, plaintiff's hand was crushed because of Richardson's negligent operation of a dock-side crane within the course and scope of his employment with the Port. Plaintiff subsequently recovered temporary total disability benefits and permanent partial disability benefits from Cascade General under the LHWCA.

Thereafter, in September 1995, plaintiff filed this personal injury action, alleging a claim for negligence under general maritime law[3] against defendants. Plaintiff sought

---

[1] Plaintiff originally also appealed the dismissal of his claims against defendant Richardson, a Port employee. However, plaintiff subsequently withdrew his appeal as to Richardson.

[2] The Blue Ridge was owned by Union Oil Company of California and operated by West Coast Shipping, Inc.

[3] It is unclear whether plaintiff was also relying on section 905(b) of the LHWCA, 33 USC section 905(b), which provides, in part:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, *may bring an action against such vessel as a third party* in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void." (Emphasis supplied.)

Although plaintiff's complaint does not refer to section 905(b), some of the submissions below, as well as the trial court's order allowing summary judgment, refer to

damages not in excess of $350,000 for his hand injury. Defendants moved for summary judgment, asserting, *inter alia*, that the Port, as a public body, and Richardson, as an employee of the Port acting within the scope of his employment, were entitled to immunity under ORS 30.265(3)(a). ORS 30.265(3) provides, in part:

> "Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are immune from liability for:

> "(a) Any claim for injury to or death of any person covered by any workers' compensation law."

Defendants reasoned that, because plaintiff was "a person covered by any workers' compensation law," *i.e.*, the LHWCA, they were *prima facie* immune from liability on plaintiff's claim.

Plaintiff responded that the operation of the Oregon Tort Claims Act (OTCA) generally, and ORS 30.265(3)(a) particularly, was preempted by general maritime law. In particular, plaintiff asserted that general maritime law is a species of federal common law and that, by virtue of the Supremacy Clause, United States Constitution, Article VI, general maritime law preempts the application of inconsistent state law. Defendants countered, finally, that general maritime law has never abrogated state sovereign immunity and that, consequently, there was no preemptive conflict between the "federalized" dictates of general maritime law and invocation of immunity pursuant to the OTCA. The trial court endorsed defendants' analysis, and plaintiff appeals from the ensuing judgment.

Before addressing the particulars of this appeal, it is important to emphasize the limited nature of the question before us. This appeal concerns only (1) the application of the OTCA's immunity provisions to (2) a negligence action under general maritime law against (3) the state or a person or entity partaking of the state's sovereignty, *i.e.*, a "state actor." This appeal does not concern—and we do not address—the

---

section 905(b). Whatever the proper characterization, plaintiff's argument on appeal is limited to whether sovereign immunity, and particularly ORS 30.265(3)(a), precludes plaintiff's claim for negligence under general maritime law.

appropriate relationship between federal *statutory* causes of action, including particularly the Jones Act, 46 USC section 688, and the OTCA.[4] Nor does this appeal concern an assertion of sovereign immunity by a "non-state" sovereign against a claim based on general maritime law. *See Hale v. Port of Portland*, 308 Or 508, 518, 783 P2d 506 (1989) ("The Port, being a part of the state's government, therefore is immune from suit to the same extent the state as such is immune.").[5]

With the issue so circumscribed, the resolution is straightforward. Our inquiry reduces to whether general maritime law preempts and overrides state sovereign immunity. The answer is "no." *Ex parte State of New York, No. 1*, 256 US 490, 41 S Ct 588, 65 L Ed 1057 (1921).

In *Ex parte State of New York, No. 1*, the Court held that sovereign immunity barred an *in personam* action under general maritime law against the State of New York. Although the Court's holding rested directly on the Eleventh Amendment[6] because the underlying action had been commenced in federal court, its analysis spoke to more general and fundamental principles of immunity and federalism:

"That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a

---

[4] Although the United States Supreme Court has held that the Eleventh Amendment bars Jones Act suits in federal court against state actors, *Welch v. Texas Highways & Public Transp. Dept.*, 483 US 468, 107 S Ct 2941, 97 L Ed 2d 389 (1987) (plurality opinion), the Court has expressly reserved the question of whether, or to what extent, such suits may be prosecuted in state court. *Id.* at 476 n 6 ("Because Eleventh Amendment immunity 'partakes of the nature of a jurisdictional bar,' *Edelman v. Jordan*, 415 US 651, 678, (1974), we have no occasion to consider the State's additional argument that Congress did not intend to afford seamen employed by the States a remedy under the Jones Act."). *See also Hilton v. South Carolina Public Railways Comm'n.*, 502 US 197, 112 S Ct 560, 116 L Ed 2d 560 (1991); *Parden v. Terminal R. Co.*, 377 US 184, 84 S Ct 1207, 12 L Ed 2d 233 (1964), *overruled in part on other grounds by Welch* 483 US at 478; *Petty v. Tennessee-Missouri Comm'n.*, 359 US 275, 79 S Ct 785, 3 L Ed 2d 804 (1959) (all pertinent to, but none expressly resolving, the issue).

[5] *Accord Workman v. New York City, Mayor &c.*, 179 US 552, 21 S Ct 212, 45 L Ed 314 (1900) (under general maritime law, city was subject to *in personam* suit, notwithstanding its assertions of substantive immunity).

[6] The Eleventh Amendment provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given: not one brought by citizens of another State, or by citizens or subjects of a foreign state, because of the Eleventh Amendment; and not even one brought by its own citizens, because of the fundamental rule of which the Amendment is but an exemplification.

"Nor is the admiralty and maritime jurisdiction exempt from the operation of the rule. * * *

"* * * * *

"*We repeat, the immunity of a State from suit in personam in the admiralty brought by a private person without its consent, is clear.*

"It is not inconsistent in principle to accord to the States, which enjoy the prerogatives of sovereignty to the extent of being exempt from litigation at the suit of individuals in all other judicial tribunals, a like exemption in the courts of admiralty and maritime jurisdiction." 256 US at 497, 500, 503 (citations omitted; emphasis supplied).[7]

---

[7] The Eleventh Amendment does not refer to suits in admiralty. However, the Supreme Court has construed that amendment as encompassing matters in admiralty for much the same reasons that, in *Hans v. Louisiana*, 134 US 1, 10 S Ct 504, 33 L Ed 842 (1890), it concluded that, while the Eleventh Amendment explicitly precludes citizens of one state from suing another state in federal court, it also implicitly precludes federal court jurisdiction over suits by citizens against their own state. As Chief Justice Hughes explained in *Monaco v. Mississippi*, 292 US 313, 324, 54 S Ct 745, 78 L Ed 1282 (1934), the answer lies in the essence of the federalist compact, as expressed by Hamilton in *The Federalist, No. 81*:

" 'It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent*. This is the general sense and the general practice of mankind; and the exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every State in the Union. Unless, therefore, there is a surrender of this immunity in the plan of the convention, it will remain with the States, and the danger intimated must be merely ideal.' " (Emphasis in original.)

*See* Lawrence H. Tribe, *American Constitutional Law*, § 3-35 at 131 n 7 (1st ed 1978) ("Hamilton's understanding that the states had not surrendered their sovereign immunity by ratifying article III is corroborated by statements of Madison and Marshall before the Virginia Convention."); *see also Hans*, 134 US at 16 ("The suability of a State without its consent was a thing unknown to the law [at the time the Constitution was ratified].").

*See generally* Grant Gilmore and Charles L. Black, Jr., *The Law of Admiralty* 612 (2d ed 1975) ("Ex parte New York No. 1 makes it clear that the State can neither be proceeded against directly nor impleaded in an action brought against the private owners."); Thomas J. Schoenbaum, 2 *Admiralty and Maritime Law* § 20-2, p. 456 n 15 (2d ed 1994) ("[I]n most cases maritime claims against states must be filed in state court relying upon state waiver of immunity statutes.").

In *Welch v. Texas Highways & Public Transp. Dept.*, 483 US 468, 107 S Ct 2941, 97 L Ed 2d 389 (1987), the Court considered a state actor's susceptibility to a Jones Act suit in federal court. In holding that the Eleventh Amendment precluded federal court jurisdiction over state defendants in Jones Act suits, a plurality of the Court, invoking *Ex parte State of New York, No. 1*, reiterated:

> "As a fallback position, the dissent argues that the doctrine of sovereign immunity has no application to suits in admiralty against unconsenting States. This argument * * * is directly contrary to long-settled authority, as well as the Court's recognition that the Eleventh Amendment affirms 'the fundamental principle of sovereign immunity,' *Pennhurst [State School & Hospital v. Halderman]*, 465 US [89,] 98, (1984); *Monaco v. Mississippi*, [292 US] at 329[.]" 483 US at 488 (citation omitted).

*See also Welch*, 483 US at 488-89 (quoting *Ex parte State of New York, No. 1* at length), and at 493 ("On balance, the early cases in fact indicate that unconsenting States were immune from suits in admiralty." (Footnote omitted.)).

At least one state court has applied the analysis of *Ex parte State of New York, No. 1* to hold that state sovereign immunity precludes a negligence claim under general maritime law against a state actor. In *Lyons v. Texas A & M University*, 545 SW2d 56, 58 (Tex Civ App 1976), the court held that the defendant state university was immune from suit in Texas state courts for personal injury claims based on general maritime law and the Jones Act:

> "Appellant has not presented any statute, general or special, authorizing a suit against the State under the Jones Act or the general maritime law. The State is clearly immune from suits in personam brought under the general

maritime law without its consent. *Ex parte* [*State of New York, No. 1*.] Nor does it appear that a suit may be brought against the State in its own courts under the Jones Act without its consent."

The Texas Supreme Court subsequently reached the same conclusion with respect to the state's susceptibility to suit in state courts on property damage claims based on general maritime law:

"Congress has expressed no clear intent to abrogate state sovereign immunity and impose general maritime law on the states for property damage. Moreover, the State's limited waiver of immunity under its Tort Claims Act permits imposition of only the state remedy, and does not allow the broader federal maritime remedy of pure comparative fault.

"The threshold issue is whether the constitutional grant of maritime jurisdiction to the federal government itself preempted state sovereign immunity law. While this is not an Eleventh Amendment case, the Supreme Court long ago addressed and resolved this issue in an Eleventh Amendment context. * * *

"* * * There is no suggestion that the holding of *Ex parte New York, No. 1*, that general maritime law does *not* preempt, is not good law.

"We conclude that maritime law does not preempt state sovereign immunity in this cause. First, this is a claim for property damage under general maritime law and not a statutory action for personal injury; [plaintiffs] rely on no federal statute to support their claim. Since there is no statute with a clear expression of congressional intent to abrogate state sovereign immunity, we must not imply one. Second, the last Supreme Court opinion addressing the issue is *Ex parte New York, No. 1*, which held that general maritime law does not preempt state sovereign immunity." *State Dept. of Highways v. Dopyera*, 834 SW2d 50, 52-53 (Tex), *cert den* 506 US 1014 (1992) (citation omitted).

A number of other state courts have applied the analysis of *Ex parte State of New York, No. 1* to Jones Act suits against state actors in state courts and have concluded that such suits are subject to state sovereign immunity. *See, e.g., Morris v. Massachusetts Maritime Academy*, 409 Mass 179, 565 NE2d 422 (1991); *Maloney v. State*, 3 NY2d 356, 165

NYS2d 465, 144 NE2d 364 (1957); *Gross v. Washington State Ferries*, 59 Wash 2d 241, 367 P2d 600 (1961). Although, as noted earlier, this case involves a personal injury claim under general maritime law and not under the Jones Act, the analysis of those cases, amplifying *Ex parte State of New York, No. 1*, is instructive.

*Morris* is exemplary. There, the court affirmed the dismissal of Jones Act claims against the defendant state Academy arising out of a fire on a training ship. The court held that the "express abrogation" requirement for overriding Eleventh Amendment jurisdictional immunity, as expressed in *Welch*, applied equally to the abrogation of a state's substantive sovereign immunity. Because the Jones Act did not expressly abrogate Eleventh Amendment immunity (*Welch*), it could not abrogate a state's sovereign immunity to actions in state court:

> "It is true that the language of the Eleventh Amendment is directed only to the 'judicial power of the United States' rather than to the judicial power of the States. However, the Supreme Court's interpretation of the constitutional principles underlying the amendment is not limited by the language. For example, although the amendment addresses only suits between States and citizens of another State or foreign states, the Supreme Court construes the principle of sovereign immunity to extend nevertheless to suits between a State and one of its own citizens. See *Hans v. Louisiana*[.]
>
> "* * * * *
>
> "Although the Supreme Court never has addressed the question whether States may claim immunity in their own courts when the Eleventh Amendment bars suit in Federal court, we think that, absent congressional command to the contrary, they may. The *Hans* line of cases indicates that the Constitution was ratified with the implicit assumption that States would retain their sovereign immunity. The only logical interpretation of this implicit constitutional principle is that it must apply regardless of the court in which the State is being sued. Any conclusion to the contrary would decimate the force of the Eleventh Amendment and demote it into nothing more than a choice of forum clause: either the State must consent to be sued in Federal court or it will be unwillingly subjected to process in its own

courts. We think the Supreme Court's Eleventh Amendment jurisprudence demonstrates a greater respect for the principle of State sovereign immunity." 565 NE2d at 425-26 (citations omitted; footnote omitted).

*See also Gross*, 367 P2d at 602 (Jones Act claim against state actor barred by plaintiff's failure to give notice of claim within 30 days as required by state Tort Claims Act: "The doctrine of a state's sovereign immunity from suit without its consent applies in actions in admiralty."); *Maloney*, 144 NE2d at 366 (where Tort Claims Act limited state's liability to injured state worker to remedies available under state workers' compensation laws, that exclusive remedy provision precluded state's susceptibility to Jones Act liability: "It is clear that the State is immune from suit *in personam* in admiralty brought by a private person without its consent[.]" (Citation omitted.))

The thrust and weight of the foregoing authorities is compelling. Conversely, plaintiff has not identified, and our own research has not disclosed, even a single case in which a federal or state court has held that a state actor, who has not waived sovereign immunity, is nevertheless liable to suit for negligence under the general maritime law. Or, perhaps stated more simply, it appears that every court that has addressed the question has held that general maritime law does not preempt or abrogate state sovereign immunity.

Plaintiff argues, nevertheless, that *Rogers v. Saylor*, 306 Or 267, 760 P2d 232 (1988), by extension, compels such a result. We disagree. In *Rogers*, the court concluded that the OTCA's limits on compensatory damages and prohibition on assessment of punitive damages did not apply to civil rights actions under 42 USC section 1983. In so holding, the court emphasized the special constitutional status of the Fourteenth Amendment and its implementing legislation in our federal system:

"Section 1983 is derived from Section 1 of the Civil Rights Act of April 20, 1871. 17 Stat 13. The Act was an exercise of Congressional power under section 5 of the Fourteenth Amendment to enforce the provisions of that amendment. *Monroe v. Pape*, 365 US 167, 171, 81 S Ct 473, 5 L Ed 2d 492, 496 (1961)[, *overruled on other grounds by Monell v. New York City Dept. of Social Services*, 436 US 658, 663, 98 S Ct 2018, 56 L Ed 2d 611 (1978)]. It was intended to create

'a species of tort liability in favor of federally secured rights.' *Smith v. Wade,* [461 US 30, 34, 103 S Ct 1625, 75 L Ed 2d 632 (1983)]. There is no question that Congress meant section 1983 to override incompatible state law in order to enforce citizens' rights against the abusive practices of persons and groups depriving any person of any rights, privileges or immunities secured by the Constitution of the United States." 306 Or at 275 (footnote omitted).

Those considerations do not pertain here. There is no preemptive "incompatibility" between the dictates of the general maritime law and the OTCA's immunity provisions. The former has traditionally recognized state sovereign immunity, and the latter embodies a qualified waiver of that immunity. Accordingly, the trial court correctly held that general maritime law does not preempt the application of ORS 30.265(3)(a). The Port was entitled to summary judgment on its immunity defense.

Affirmed.