Rudy C. AGUON, Plaintiff–Appellee,

v.

COMMONWEALTH PORTS AUTHOR-ITY; Antonio B. Cabrera, Defen-dants–Appellants.

No. 01–16613.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 2002.

Filed Jan. 13, 2003.

Douglas F. Cushnie, Saipan, MP, for the defendants-appellants.

Reynaldo O. Yana, Saipan, MP, for the plaintiff-appellee.

Before SCHROEDER, Chief Judge, ALARCÓN and FISHER, Circuit Judges.

ALARCÓN, Circuit Judge.

Defendants–Appellants Commonwealth Ports Authority ("CPA") and Antonio B. Cabrera ("Cabrera") appeal from the judgment in favor of Plaintiff–Appellee Rudy Aguon ("Aguon") and the denial of their motions filed pursuant to Rule 50(b) and Rule 59 of the Federal Rules of Civil Pro-

cedure. The dispositive issue in this case is whether the CPA, as a public corporation created by the Commonwealth of the Northern Mariana Islands ("the Commonwealth") to operate and manage its ports, and Cabrera, acting in his official capacity, are subject to liability pursuant to 42 U.S.C. § 1983 for damages for violating federal law under color of the Commonwealth's laws.

We conclude that the CPA is not a person under § 1983 because it is an instrumentality of the Commonwealth. Therefore, the judgment against CPA and Cabrera must be reversed.

I

Prior to filing this § 1983 action, Aguon had been employed by CPA as a tariff control technician for approximately six years. In 1997, CPA reduced the number of its employees and initiated a program referred to as "Cross Utilization." Under this program, the hours of the work week were reduced and CPA employees were required to perform duties not listed in their job classification.

The added tasks included janitorial duties such as cleaning, sweeping, and washing different areas of the ports. In his complaint, Aguon alleged that he was denied equal protection because his additional work assignments were more time consuming and onerous than those assigned to other workers.

On July 7, 1999, CPA's Executive Director Carlos Salas suspended Aguon for ten days due to his continued absenteeism and unauthorized failure to report for work for seven days. On March 3, 2000, Aguon failed to report for work. His supervisor denied him authorized sick leave. In his lawsuit, Aguon also claimed that he was deprived of his right to due process because he did not receive a hearing be-

fore the suspension or the denial of sick leave.

The jury found that CPA was liable to pay Aguon $2,846.02 for the denial of his right of equal protection in work assignments, $778.40 for denying him a hearing before suspending him, and $77.84 for refusing to pay him for the day he missed work because of illness.

The jury found that Cabrera, acting in his official capacity, was liable in the amount of $77.84 for denying Aguon's request for sick leave and $1.00 for mental distress. The district court denied the motion filed by CPA and Cabrera for judgment as a matter of law pursuant to Rule 50 and their motion for a new trial pursuant to Rule 59. The district court entered judgment against CPA and Cabrera, acting in his official capacity, that reflected the damages awarded by the jury.

CPA and Cabrera have filed a timely notice of appeal. We have appellate jurisdiction under 28 U.S.C. § 1291 from the district court's final judgment.

## II

CPA contends that it cannot be held liable under § 1983 because it is an arm of the Commonwealth. Cabrera maintains that he cannot be held liable under that statute for conduct that occurred while he was acting in his official capacity as a seaport manager of CPA. To determine whether either CPA or Cabrera is liable, we must decide whether CPA is a "person," as that term is used in § 1983.[1]

■ We held in *De Nieva v. Reyes*, 966 F.2d 480 (9th Cir.1992) that the Commonwealth and its officers acting in their official capacity are not persons under § 1983. *Id.* at 483. "Neither the [Commonwealth] nor its officers acting in their official capacity can be sued under § 1983." *Id.*

■ We have also held that "[u]nder the eleventh amendment, agencies of a state are immune from a private damage action or suits for injunctive relief brought in federal court." *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir.1988). We have not previously considered the question whether an entity created by the Commonwealth, is a "person" subject to liability for damages under § 1983.

■ In the Eleventh Amendment context, we employ a five-factor test to determine whether an entity is an arm of the state: (1) "whether a money judgment would be satisfied out of state funds," (2) "whether the entity performs central governmental functions," (3) "whether the entity may sue or be sued," (4) "whether the entity has the power to take property in its own name or only the name of the state" and (5) "the corporate status of the entity." *Mitchell*, 861 F.2d at 201. Eleventh Amendment immunity is not at issue here because the Eleventh Amendment does not apply to the Commonwealth. *Fleming v. Dept. of Public Safety*, 837 F.2d 401, 405–06 (9th Cir.1988), overruled in part on other grounds by *De Nieva*, 966 F.2d at 483. Nevertheless, the *Mitchell* five-factor test guides our analysis in determining

---

1. Section 1983 provides as follows:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

   42 U.S.C. § 1983.

whether an entity is an arm of the Commonwealth, and thus not a person under § 1983.

■ In ascertaining whether an entity is an arm of a state under the Eleventh Amendment, the first *Mitchell* factor, whether a judgment would impact the state treasury, is the most critical. *Alaska Cargo Transp. Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 380 (9th Cir.1993).

■ CPA concedes that it would probably bear the cost of any judgment in the first instance given its substantial resources. These resources derive from CPA's power to charge fees for the use of all property under its control and to retain such fees for its own use. 2 N. Mar. I. Code § 2122 (1999). CPA argues, however, that the Commonwealth government would ultimately cover the portion of any judgment in excess of CPA's resources.

■ The question is whether the Commonwealth, although not directly liable for a judgment against CPA, is nonetheless the "real, substantial party in interest." *Alaska Cargo*, 5 F.3d at 380. In making this determination, "we cannot divorce the second *Mitchell* factor, the governmental function [CPA] performs, from our assessment of the first factor, which is the impact on the [Commonwealth] of a judgment against [CPA]." *Id.*

In *Alaska Cargo*, we found under the second *Mitchell* factor that the Alaska Railroad Corp. (ARRC) performs a central government function in "managing and operating a critical transportation, supply, and communication network. . . ." *Id.* at 380. We concluded that:

> [I]f faced with a large money judgment, ARRC would be compelled to turn to legislative appropriation in order to remain in business, and the legislature would have to respond favorably so that the "essential" transportation function would continue to be performed and to

protect the state's very substantial investment in the Alaska Railroad.

*Id.* at 381 (quoting *Alaska Cargo Trans., Inc. v. Alaska R.R. Corp.*, 834 F.Supp. 1216, 1221 (D.Alaska 1991)).

Here, CPA performs a central governmental function for the Commonwealth, equally indispensable to the role of the ARRC in Alaska. In determining CPA's role within the Commonwealth, we look to the way the laws of the Commonwealth treat CPA. *See Mitchell*, 861 F.2d at 201 (holding that to determine whether an entity is an arm of the state "the court looks to the way the state law treats the entity").

CPA was created as the "best, most economical, and most useful means . . . to develop the air and sea navigation and transportation within and to and from the Commonwealth to their fullest potential." 2 N. Mar. I. Code § 2111 (1999). CPA is responsible for, and possesses all powers incident to, carrying on the business of acquiring, establishing, developing, extending, maintaining, operating and managing ports. *Id.* § 2122(a). CPA has exclusive jurisdiction to plan, establish, develop, construct, enlarge, improve, maintain, equip, operate and regulate the ports within the Commonwealth and to protect, police and to establish minimum building codes and regulations for its sea and air ports. *Id.* § 2122(b).

CPA was established to act on behalf of the Commonwealth in its dealings with the United States. By statute, CPA assumed all rights, obligations and duties of the Commonwealth under any agreements the Commonwealth government may have had with any department or agency of the United States in connection with the operation of any ports in the Commonwealth. *Id.* § 2185. CPA is eligible to act for the Commonwealth and to do anything necessary to establish eligibility for federal funding. *Id.*

From the foregoing, we conclude that if CPA were to be faced with a large money judgment which it could not pay, the Commonwealth would be compelled to protect its island economy by responding with an appropriation to provide the citizens of the Commonwealth with essential seaport and airport services. The Commonwealth is thus the real party in interest and the first two *Mitchell* factors weigh heavily in favor of finding CPA to be an arm of the Commonwealth.

The third *Mitchell* factor is whether the entity may sue or be sued. *Mitchell,* 861 F.2d at 201. Under the Commonwealth code, CPA may sue and be sued in its own name. 2 N. Mar. I. Code § 2121 (1999). Thus, the third factor weighs against CPA's status as an arm of the Commonwealth. This factor, however, is entitled to less weight than the first two. *Alaska Cargo,* 5 F.3d at 381.

The fourth *Mitchell* factor looks at "whether the entity has the power to take property in its own name or only the name of the state." *Mitchell,* 861 F.2d at 201. Here, CPA has the power to take and hold property in its own name. 2 N. Mar. I. Code § 2122(c), (p) (1999). However, like a government entity, CPA may also acquire property by eminent domain. *Id.* § 2151. Thus, this factor weighs neither strongly in favor nor strongly against CPA's status as an arm of the Commonwealth.

The last *Mitchell* factor examines "the corporate status of the entity." *Mitchell,* 861 F.2d at 201. Like the ARRC at issue in *Alaska Cargo,* CPA is a public corporation. In creating CPA, the Commonwealth stated: "There is *in the Commonwealth government* a public corporation called the Commonwealth Ports Authority. *Its functions are governmental and public.*" 2 N. Mar. I. Code § 2121 (1999) (emphasis added). A "public corporation" is defined as follows: "A corporation that is created by the state as an agency in the administration of civil government.... A government owned corporation that engages in activities that benefit the general public, usu. while remaining financially independent. Such a corporation is managed by a publicly appointed board." Black's Law Dictionary 344 (7th ed.1999). Like a traditional governmental entity, CPA is exempt from taxation and business regulation by the Commonwealth, and from bond and security requirements in any suit or action brought by or against it. 2 N. Mar. I. Code §§ 2161, 2163. Further, no lien may be filed against any CPA property. *Id.* § 2163.

To determine whether the fifth factor weighs for or against CPA's status as an arm of the Commonwealth, we must ultimately look to CPA's degree of autonomy from the Commonwealth government. *See Alaska Cargo,* 5 F.3d at 382 (determining that the state's extensive involvement with the board of ARRC rendered the entity "far from autonomous"). Like the ARRC in *Alaska Cargo,* the CPA has a government-appointed board of directors. *Alaska Cargo,* 5 F.3d at 381–82; 2 N. Mar. I. Code § 2123. All powers vested in CPA are exercised by the board. 2 N. Mar. I. Code § 2123. Each director is appointed by the Governor with the advice and consent of the Senate. *Id.* Unlike the Governor's other appointees, however, the directors of CPA may be removed by the Governor only for cause. 1 N. Mar. I. Code § 2901(f); 2 N. Mar. I. Code § 2123.

The Commonwealth's control over the composition of CPA's board undoubtedly places a constraint on CPA's freedom to act. Nevertheless, CPA retains a significant measure of autonomy. Unlike the ARRC in *Alaska Cargo,* CPA has authority to issue general and special revenue bonds, expand its operations by acquiring land, and sign long term contracts and

leases without prior legislative approval. *Id.* at § 2122; *compare Alaska Cargo*, 5 F.3d at 381–82. In fact, none of the far-reaching powers vested in the board is subject to prior government approval. 2 N. Mar. I. Code at § 2122. CPA must, however, submit an annual report of its finances to the Governor and the legislature, and must also, upon request, furnish them with quarterly financial reports. *Id.* § 2129.

On balance, the fifth factor weighs neither for nor against CPA's status as an arm of the Commonwealth. The Commonwealth's power over the make-up of the board on the one hand, and the board's authority to exercise its wide-ranging powers without prior government approval on the other, leaves the balance in equipoise.

In the final analysis, the first two factors weigh heavily in favor of CPA as an arm of the Commonwealth, while only the less-weighty third factor weighs against. We hold that CPA is an arm of the Commonwealth of the Northern Mariana Islands, and is therefore not a person within the meaning of § 1983. Thus, CPA and its officers in their official capacities may not be sued for damages under that statute. We express no view regarding the merits of Aguon's claims.[2]

The district court's entry of final judgment against the Commonwealth Ports Authority and Cabrera in his official capacity is REVERSED.

---

**2.** We note that our holding does not render CPA officials absolutely immune from suit under § 1983. CPA officials, like all officials of the Commonwealth, may be sued in their official capacities for injunctive relief, *see* *Guam Soc'y of Obstetricians and Gynecologists v. Ada*, 962 F.2d 1366, 1371 (9th Cir. 1992), and in their individual capacities for damages, *see Charfauros v. Bd. of Elections*, 249 F.3d 941, 956–57 (9th Cir.2001).