John JOHNSON,
individually and for all others similarly situated,
*Appellant,*

*v.*

SAIF CORPORATION,
an Oregon public corporation,
and Brenda Rocklin,
*Respondents.*

0207-07157; A123541

132 P3d 1058

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Robert M. Atkinson, Assistant Attorney General, for petition.

Meagan A. Flynn and Preston Bunnell & Stone, LLP, for response.

Before Landau, Presiding Judge, and Schuman* and Ortega, Judges.

LANDAU, P. J.

---

* Schuman, J., *vice* Richardson, S. J.

## LANDAU, P. J.

Plaintiff initiated this action under 42 USC section 1983 against defendants SAIF Corporation and its president and chief executive officer, alleging that defendants deprived him of his right to due process under the Fourteenth Amendment to the United States Constitution by terminating his permanent total disability workers' compensation benefits without a pretermination hearing. Defendants sought, and the trial court granted, summary judgment on the ground that SAIF is not a "person" subject to liability under section 1983.

Plaintiff appealed, arguing that SAIF indeed is a "person" within the meaning of the federal statute on which his claim is based. Plaintiff argued that, under existing federal precedent, whether a defendant is a "person" under that statute is determined essentially by reference to Eleventh Amendment principles, that is, by determining whether a defendant is immune from suit because it is an arm of the state. Plaintiff argued that whether a defendant is an arm of the state for Eleventh Amendment purposes is, in turn, determined by reference to, among other things, how the defendant is treated by state statute and state court case law and whether the state treasury is liable for the obligations of the defendant.

For their part, defendants argued summarily that SAIF is an arm of the state, citing two federal court decisions, namely, an unpublished opinion of the Court of Appeals for the Ninth Circuit and a published opinion of the district court.

We rejected defendants' contention. We explained that the cases on which they relied failed to examine the issue in light of the analysis required by United States Supreme Court case law, which we concluded placed particular emphasis on how an entity has been characterized as a matter of state law and whether the state treasury is vulnerable to satisfy that entity's obligations. *Johnson v. SAIF*, 202 Or App 264, 122 P3d 66 (2005). We examined in some detail the history of SAIF and the manner in which it has been characterized by the state legislature and by the state courts

over its history and concluded that the state law characterization of SAIF "does not strongly weigh either for or against Eleventh Amendment immunity." *Id.* at 294. We also examined the relationship between SAIF's operations and the vulnerability of the state treasury and concluded that we were aware of no law that obligated the treasury to satisfy SAIF's fiscal obligations. *Id.* at 293-94.

Defendants now request reconsideration of both of those holdings. They acknowledge that they previously relied "perhaps imprudently" on only the two federal court decisions, but they insist that we now must reconsider our decision for two reasons.

First, defendants contend that our analysis of the manner in which the legislature and state courts have characterized SAIF is flawed because we placed "undue emphasis" on cases that predate SAIF's 1979 reorganization, because we mischaracterized one of those early Supreme Court decisions, *Butterfield v. State Indus. Acc. Com.*, 111 Or 149, 223 P 941, *on reh'g*, 226 P 216 (1924), and, to the extent that we relied on later Supreme Court case law for our analysis of *Butterfield*, because we erred in failing to recognize that the later case law is incorrect. We reject defendants' contentions.

█ Defendants begin in something of a deep hole: They are making the sort of arguments that might have been helpful *before* we issued an opinion rather than *after*. We ordinarily do not entertain arguments asserted for the first time on reconsideration. *See, e.g., Kinross Copper Corp. v. State of Oregon*, 163 Or App 357, 360, 988 P2d 400 (1999), *rev den*, 330 Or 71 (2000) ("If a contention was not raised in the brief, * * * it is not appropriate to assert it on reconsideration."). In this case, defendants have offered no good reason—in fact, they have offered no reason at all—for their failure to have asserted their new arguments previously.

Aside from that, the new arguments are unpersuasive. We placed no particular "emphasis" on pre-1979 cases. We recounted the history of the manner in which the legislature organized, and several times reorganized, what is now known as SAIF Corporation, as well as the variety of cases in which the courts of this state have characterized the

legal implications of those organizational decisions for various purposes. *Johnson*, 202 Or App at 278-91. If we emphasized anything, it was that the 1979 legislation that reorganized the entity into "an independent public corporation," Or Laws 1979, ch 829, § 2, resulted in an "ambiguous" entity, that is expressly subject to some statutes that apply to state agencies and expressly exempted from others. *Johnson*, 202 Or App at 285-87.[1] As for the case law, we noted that not a single state court decision has addressed whether SAIF is an "arm of the state" for Eleventh Amendment purposes. *Id.* at 293.

We did characterize *Butterfield* as holding that a suit against the State Industrial Accident Commission was not a suit against the state under the law that existed at the time. *Johnson*, 202 Or App at 280-81. We stand by that characterization. In *Butterfield*, the Attorney General argued that "the State Industrial Accident Commission is an arm of the state" and that, as a result, the state is the real party interest in workers' compensation claims litigation. 111 Or at 152. The Supreme Court rejected that argument, holding that "[t]he state is not a party" to such cases. *Id.* at 153. Defendants now propose a different reading of *Butterfield*. They contend that the court actually based its decision on "the legislature's waiver of whatever immunity from suit SIAC would have had as an arm of the state." We can find no support for that interpretation of *Butterfield* in the text of the court's opinion, however. Defendants' reading of the case also is at odds with the manner in which the Supreme Court itself later characterized *Butterfield* in *Bennett v. State Ind. Acc. Com.*, 203 Or 275, 280-81, 279 P2d 655 (1955). Defendants suggest that *Bennett* was incorrectly decided in that respect. That defendants disagree with the Supreme Court's decision, however, is a matter that is more appropriately addressed to the Supreme Court. *See Gunn v. Lane County*, 173 Or App 97, 102 n 3, 20 P3d 247 (2001) (parties' contentions that Supreme Court case law is in error must be addressed to the Supreme Court, not this court ).

---

[1] For a similar take on the legislation, see 46 Op Atty Gen 323 (1990) ("The new status of the state's insurance company was characterized by acute ambiguity.").

■ Second, defendants argue that the state treasury is, in fact, vulnerable for at least some of SAIF's obligations. Defendants concede that the state is not likely liable for debts that SAIF is "contractually obligated to pay." Defendants argue that SAIF is, however, subject to the Oregon Tort Claims Act and that the Risk Management Division of the Department of Administrative Services is obligated to pay tort claims against SAIF, as for any state agency. Defendants seek to establish that the Risk Management Division pays tort claims against SAIF by introducing two sets of documents that were not submitted to the trial court and are not part of the record of this case. Each consists of a transmittal letter from the Risk Management Division and an accompanying claim check that we are to assume constitutes payment of a tort claim against SAIF. Those documents, in defendants' view, "demonstrate beyond any doubt that the state is responsible for paying tort judgments entered against SAIF." We reject defendants' argument for several reasons.

■ To begin with, an argument that the trial court was correct for reasons not advanced below cannot be raised for the first time on appeal if doing so entails making a different record. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001) (rule permitting affirmance for alternative reason not advanced to trial court requires that "the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below"). That certainly appears to be the posture of this case, in which defendants acknowledge that their argument relies on a record that is different from the one developed before the trial court.

Defendants attempt to avoid that problem by arguing that we can take judicial notice of the documents because they are "public records." The fact that we may take judicial notice of a fact, however, does not mean that the record has not changed or that plaintiff is not prejudiced by the inability to respond by making a different record of his own. Aside from that, just because a document is a "public record" does not mean that the information that it contains is properly the subject of judicial notice. Defendants alert us to no authority supporting the proposition, and we are aware of none. Defendants cite OEC 201, but that rule merely states that we *may*

take judicial notice for the first time on appeal, *as long as the evidence otherwise is properly the subject of judicial notice.* Defendants also cite OEC 803(8), but all that rule provides is that certain public records are not hearsay, not that they are subject to judicial notice.

Assuming that we could entertain the argument, assuming that we could take judicial notice of the documents on which defendants rely for support of that argument, and assuming all of the inferences that defendants ask us to derive from those documents, we are not persuaded that the documents demonstrate what defendants suggest. At best, they demonstrate that SAIF participates in a state-managed insurance fund that is "separate and distinct from the General Fund," ORS 278.425(1), that operates on an actuarial basis, ORS 278.435(1), and that is financed out of assessments based on "relative risk and loss experience," ORS 278.435(3), like any insurance policy. Defendants do not explain—and we do not understand—why the fact that SAIF obtains what is, in essence, an insurance policy from the state necessarily leads to the conclusion that it is an arm of the state *for Eleventh Amendment purposes.* Indeed, the law provides that local governments also may contract with the Risk Management Division to obtain the same insurance, ORS 30.282(4), and we know from United States Supreme Court decisions that that does not make them arms of the state for Eleventh Amendment purposes. *See Howlett v. Rose,* 496 US 356, 377, 110 S Ct 2430, 110 L Ed 2d 332 (1990) (state law may not immunize local government from liability under federal civil rights statute).

For all of the foregoing reasons, we reject defendants' new arguments in support of the trial court's entry of summary judgment.

Petition for reconsideration allowed; opinion adhered to.